[No. 7,093.—In Bank.]

M. J. O'CONNOR v. GEORGE W. FRASHER ET AL.

| 56 | 499 |
| 108 | 63 |
| 56 | 499 |
| 113 | 53 |
| 56 | 499 |
| 141 | 457 |

STATE PATENT—STATE LANDS—JURISDICTION OF LAND OFFICERS.—In an action of ejectment upon a State patent for land, of which it appeared the patentees had never been in possession, and upon which the defendant, subsequently to the issue of the patent, had settled as a pre-emptor, the defense was, that the patent was issued without authority, and especially that the land, at the date of the State selection, and until after the issue of the patent, was within the limits of a Mexican claim, still pending and undetermined; and was therefore not public land within the meaning of the Acts'of Congress granting school lands or *school indemnity* lands to the State. *Held*, that the questions, whether the land was or was not public land within the meaning of the acts referred to, or whether the survey thereof was with or without authority of law, were questions which it was the duty of the land officers to determine, and if they made a mistake in their judgment, their action was erroneous, and not a mere nullity, and that the patent could therefore not be attacked.

ID.—ID.—ID.—If the authority to issue the patent depends upon the existence of particular facts in reference to the condition or location of the property, or to the performance of certain antecedent acts, and officers have been appointed for the ascertainment of these matters in advance, who have passed upon them and given their judgment, then the patent, though the judgment of the officers be in fact erroneous, cannot be attacked collaterally by parties showing title subsequently from the same source, much less by those who show no color of title in themselves. In such cases, the parties without title cannot be heard at all, and the parties with subsequent title must seek their remedy by *scire facias*, or bill or information to revoke the first patent or limit its operation. (Affirming *Doll* v. *Meador*. 16 Cal. 325, and other cases.)

APPEAL from a judgment for the defendant, and from an order denying a new trial, in the Superior Court of Los Angeles County. SEPULVEDA, J.

*John D. Bicknell*, and *Taylor & Haight*, for Appellant.

The cases of *O'Connor* v. *Frasher*, 53 Cal. 435, and *Fletcher* v. *Mower*, ante, 421, and *Churchill* v. *Anderson*, ante, 55, decide every point raised in the case at bar. Those cases show conclusively, that the State title held by the plaintiff is valid, and safe from any collateral attack.

*Will D. Gould*, and *James H. Blanchard*, for Respondents.

At the date of the State selection, and until after the patent was issued, the lands were within the claim of the Rancho Sausal Redondo, and therefore reserved from location. (*Huff*

v. *Doyle*, 50 Cal. 16 ; *S. C.* 3 Otto, 558 ; *Grogan* v. *Knight*, 27 Cal. 515 ; *Bernard Heirs* v. *Ashley*, 18 How. 4 ) ; *Van Reynegan* v. *Bolton*, 95 U. S. 33 ; *Smith* v. *Athern*, 34 Cal. 512 ; *Hodapp* v. *Sharp*, 40 id. 69 ; *Toland* v. *Mandell*, 38 id. 30 ; *Collins* v. *Bartlett*, 44 Cal. 380.) Public lands signify such as are open to sale or other disposal under general laws. (*Newhall* v. *Sanger*, 2 Otto, 761.)

SHARPSTEIN, J. :

The plaintiff sues in ejectment for the recovery of the possession of the land described in the complaint. The conclusion at which we have arrived renders it unnecessary to consider anything beyond the uncontroverted facts found by the Court below. The land which the plaintiff seeks to recover was sold and patented on the 21st day of April, 1874, by the State of California, to one Robert Thompson, from whom the plaintiff deraigns his title through the mesne conveyance of one W. S. Rosecrans, whose conveyance to plaintiff is dated April 12th, 1875. The land was listed to the State as lieu land, and the list certified by both the commissioner of the general land office and the Secretary of the Interior. By the former, on the 29th day of May, 1872, and by the latter, on the 31st of May, 1872. The defendant entered upon the land on the 8th day of June, 1876, and tendered his filing thereon in the United States land office, with all legal fees, claiming the land as a pre-emptor, and on the 18th day of December, 1876, tendered his final proof and payment to the officers of the United States land office, which was refused, and an appeal was taken from the action of the officers of the local office to the commissioner of the general land office, and the same is now pending. At some time in the year 1879, the defendant applied to the proper officers of this State to purchase said land from the State, and said application is now pending and undetermined.

From which it appears, that the defendant's right to controvert the plaintiff's title is based solely upon the ground of a naked entry by the defendant upon the land more than two years after the State had sold and patented it to the plaintiff's grantor, and more than four years after the land had been listed by the United States to this State. Now, conceding that the facts al-

leged by the defendant are all true, and that the land was improp-
erly listed to the State, and that the State improperly conveyed
it to the plaintiff's grantor, and that the acts of all the officers
who certified said list, and issued the patent of said land, should
be revoked by the proper departments of the State and Federal
Governments, the fact still remains that the plaintiff has a patent
which is regular upon its face, and the proceedings resulting in
it were the usual proceedings in such cases, and regular in form.
The questions, whether the land was or was not public land
within the meaning of the Acts of Congress granting lands to
the State of California as school lands or school indemnity lands,
or whether the survey thereof was with or without authority of
law, were questions which it was the duty of the land officers to
determine, and if they made a mistake in judgment, their action
was erroneous, and not a mere nullity. (*Dodge* v. *Perez*, 2
Sawy. 645.)

If the authority to issue the patent depends upon the exist-
ence of particular facts in reference to the condition or location of
the property, or to the performance of certain antecedent acts, and
officers have been appointed for the ascertainment of these mat-
ters in advance, who have passed upon them and given their
judgment, then the patent, though the judgment of the officers
be in fact erroneous, cannot be attacked collaterally by parties
showing title subsequently from the same source, much less by
those who show no color of title in themselves. In such cases,
the parties without title cannot be heard at all, and the parties
with subsequent title must seek their remedy by *scire facias*,
or bill or information to revoke the first patent or limit its oper-
ation. (*Doll* v. *Meador*, 16 Cal. 325; *Ah Yew* v. *Choate*, 24
id. 566; *Frisbie* v. *Whitney*, 9 Wall. 187; *Hutchings* v. *Low*,
15 id. 77.)

But it is unnecessary to cite authorities upon this point.
When this case was here before ( *O'Connor* v. *Frasher*, 53 Cal.
435), the late Court said: "Treating the whole pleadings (of
the defendant) as a cross-complaint, the demurrer should have
been sustained"; and cited *Thomas* v. *Lawlor*, 53 Cal. 405, in
which the doctrine of *Doll* v. *Meador*, *supra*, is clearly recog-
nized and followed.

The judgment and orders denying a new trial are reversed,

and the Court below is directed to enter judgment for plaintiff against the defendants Frasher, Brush, Dotson, Somes. and McClain.

THORNTON, J., McKEE, J., and McKINSTRY, J., concurred.

MYRICK, J., dissenting:

I dissent, for the reasons herein after stated:

1. The lands in controversy are lands attempted to be located and patented as lieu lands, so called, and are within the exterior lines of what had been claimed to be the Rancho Sausal Redondo, a Mexican grant. At least two surveys of the grant have been made, and there was a controversy between the owners of the grant and others, as to whether the lands involved in this suit, and other lands, were or were not to be included within the final survey and confirmation. Not until 1875 was the survey of the grant finally approved by the commissioner of the general land office; which survey excluded the lands from the grant. Previous to that time, as the controversy progressed, plats and surveys had been filed and withdrawn. Plaintiff claims title under a State patent. He was never in possession. In my opinion, the State patent, issued before 1875, and based upon proceedings of the various land officers before 1875, is void, and can be questioned by any person in possession. Prior to 1875, the State had no title to grant, and the assumption by its officers of the power to grant, and the location and patent, were void acts.

2. The several defendants defend each in his own right. The Court below found, separately in regard to the defendants, substantially as follows:

"That about the 6th day of March, 1868, W. S. Rosecrans procured for his own benefit a great number of men to make applications to purchase the lands from the State of California described in plaintiff's complaint; that said applications purported to have been made under the provisions of an act entitled ' An Act to provide for the sale of certain land belonging to the State,' approved April 27th, 1863, and none of said applications were signed by any person.

" That each of said applicants conveyed by deed to one W.

S. Rosecrans the lands for which he so applied; some of which deeds were made and executed immediately before, some at the time of, and others immediately after, the applications were made as above. That neither the said applicants, nor any one in their behalf, ever paid the State of California for said applications, or for the execution thereof; all expenses connected therewith being wholly borne by said Rosecrans. That the said applications and deeds were all one and the same transaction, and were wholly fraudulent and void, *ad initio*, and were obtained in the behalf of said Rosecrans, who paid each applicant a sum of money therefor, and in fraud of the provisions of said Act of April 27th, 1863. That said applicants were not informed by said Rosecrans, or any other person, of the contents of said application, and that they did not read the affidavits accompanying said applications; nor were they informed by any officers authorized to take acknowledgments, or any other person, of the contents thereof, and were not sworn to any oath or affidavits connected therewith.

" That the application of Robert Thompson for the land described in defendant's answer was one of said fraudulent applications, and was made May 1st, 1869, for the benefit of said Rosecrans, and was fraudulent. That said application was presented to the State locating agent, and by him accepted and filed on the 1st of May, 1868.

" That said application was not accompanied by an affidavit of three disinterested persons, stating, among other things, that said applicant was a resident of the State, and that the lands were unoccupied by any person except the applicant, as required by said Act of April 27th, 1863.

" That said applicant omitted and neglected to file in the office of the county recorder of the county in which the lands were situated a description of the lands applied for, with a certificate of the oath or affirmation indorsed thereon, as required by the 29th section of said Act of April 27th, 1863.

" That plats, including these lands, purporting to be township plats, were made and filed for the first time in the United States land office of San Francisco, April 22nd, 1868; that said plats were recalled by the United States Surveyor-General May 23th, 1868, and were never again filed in said land office.

"That by reason of said application, Leander Ransom, State locating agent of the State of California, on May 27th, 1868, pretending to act under and by virtue of law, and in part satisfaction of the grant by the United States to said State of other lands, in lieu of the 16th and 36th sections, for school purposes, under an Act of Congress approved March 3rd, 1853, entitled ' An Act to provide for the survey of the public lands in California, the granting of pre-emption rights therein, and for other purposes, and of an Act of Congress approved July 23rd, 1856, entitled ' An Act to quiet land titles in California,' selected and located the lands described in said application for the State of California.

"That the selection and location of said land was the result of and made in satisfaction of said application, and corresponded with it in number and in the description of the land applied for.

"That the United States Surveyor-General for the State of California never furnished the State authorities with a list or lists including any of the said 16th and 36th sections, or any part thereof, used by said State locating agent in said selection and location as a basis of selection, as required by § 6 of said Act of Congress, approved July 23rd, 1866.

"That thereafter, by reason of said application, selection, and location, to wit, on the 23rd and 24th days of November, 1871, and long prior to the lapse of the ninety days after filing of the township plats including said lands in the United States district land office, the commissioner of the United States general land office and the Secretary of the Interior inadvertently and by mistake certified and listed said lands to the State of California, and that the lists including said lands were identical with said application, selection, and location in number, description of land selected; and none of said land thus selected was of the character contemplated by any Act of Congress, or intended to be granted thereby.

"That on or about the 25th day of August, 1869, before said lands were legally surveyed, and when there was no township plat including said lands on file in the United States district land office, said W. S. Rosecrans made application to the Surveyor-General of the State of California, John W. Bost, to

purchase and locate all of said described lands in the applications mentioned in the second finding, which were with them identical in description of land applied for, and the 16th and 36th sections used as a basis of said application.

" That on the 27th day of August, 1869, Robert Gardiner, signing himself as Surveyor-General of the State of California, accepted said application at a time long prior to his election or qualification for said office, and that said application was never accepted by any other person.

" That thereafter, to wit, on the 10th day of February, 1872, Robert Gardiner, then Surveyor-General of the State of California, basing his approval upon the recital therein, to wit, ' That the location has been made by the then locating agent in the name and for the benefit of the State of California, at the Los Angeles district, in the city of Los Angeles, with the consent of list No. 1 of said district, bearing date the 24th day of November, 1871,' approved each of said applications.

" That thereafter, and in consequence thereof, certificates of purchase and patents issued from the State of California for said land to W. S. Rosecrans.

" That neither the plaintiff, M. J. O'Connor, nor said Rosecrans, nor the said Robert Thompson, nor either of them, were ever in the actual possession of said lands, or any part thereof, or ever had any improvements thereon, or ever had any portion thereof fenced or inclosed in any way, and that all of said lands are rich agricultural lands, and that the plaintiff and his grantor have every year, since 1872, leased the land in controversy to persons who have used the same for grazing purposes, pasturing sheep thereon, and have so used it until the defendant entered thereon.

" That the plaintiff M. J. O'Connor bases his claim to said lands, and in no other way than by a deed to the same from W. S. Rosecrans, and the above procedure herein found.

" That the township plats, including said lands, were, on the 21st day of November, 1871, filed for the first time in the United States district land office, at Los Angeles, California.

" That, at the time of making said application and selection, the Rancho La Liebre, within the limits of which the west half of section 16, township 9 north, range 17 west, S. B. M., was

situated, which was the basis of said application and selection in finding second above, had been finally surveyed and located by the proper authorities of the United States, and said lands were, at the time of said application and selection, actually lost to the State of California as school lands, by reason of such final survey.

"That said defendant George W. Frasher was a duly qualified pre-emption settler, and fully entitled to the privileges of the pre-emption laws of the United States, and settled upon said tract of land claimed by him, as above found, in good faith as such settler, and performed thereon all acts required by said pre-emption laws to entitle a person to pre-empt public land.

"That on the 8th day of June, 1876, the defendant applied to the register and receiver of the United States district land office at Los Angeles, Cal., to file his declaratory statement in due form upon said land, as required by the laws of the United States. That, at the time of making said application, the defendant was living on said land with his family, and had made valuable improvements thereon. That on said 8th day of June, 1876, said defendant did tender and deposit his declaratory statement in due form with the register and receiver of the proper United States district land office, together with all legal fees therefor.

"That afterwards, to wit, on or about the 18th day of December, 1876, said defendant made the requisite and usual proofs before the register and receiver of said United States district land office of his qualifications and his settlement, and his improvements on said tract of land, and tendered the same in writing, and deposited the same with said register and receiver, and at the same time tendered the full Government price therefor, with all legal fees and commissions, and requested that he be permitted to enter said land at said land office, under said pre-emption laws, and that said register and receiver refused to approve said claim of the defendant, and refused to permit him to enter said lands under said pre-emption laws, and refused to receive the purchase-price tendered, and still so refuses.

"That said defendant duly appealed from said action of the register and receiver, and that said claim is now pending before the United States general land office.

" That on the ―― day of ――, 1879, said defendant duly applied to the proper authorities of the State of California to purchase said land from the State, and that said application is now pending and undetermined."

I agree with the Court below in its conclusions of law, as follows : " That none of said lands thus included within the boundaries or exterior limits of the private grant, to wit, the Rancho Sausal Redondo, were public lands within the meaning of the Acts of Congress granting lands to the State of California as school lands, or as State indemnity lands, until the said claim covering them was finally decided to be invalid, and all of such lands were thus excluded from any mode of acquirement. They were not in a condition to be applied for or acquired by individuals, or selected by the State, and that the attempt of the surveyor-general to remove the reservation, and to extend the public survey over said lands, and the filing of township plats including the same in 1868, were without authority of the law, and were wholly void. The evidence does not warrant the conclusion that the survey of the Rancho Sausal Redondo in 1868 was made by deputy Hansen under the eighth section of the Act of Congress, 1866 ; on the contrary, the evidence shows that said survey was not made under said act, or by authority thereof.

" That the defendant is in such privity with the United States, the paramount source of title, as enables him to attack the patent issued to plaintiff's grantors by the State for the land in controversy, and upon which plaintiff rests his title in an action at law or equity.

" That the selection of said land was void, as having been made without authority of law, and being void, the State had no title which it could convey to plaintiff's grantor ; that said land was not intended to be granted by any law of Congress, and the listing of said lands to the State by the commissioner of the general land office was null and void, and the patents from the State for said lands are void, and the plaintiff has no title to said land, or any part thereof.

" That an invalid State selection is no bar to the rights of a pre-emption or homestead settler, and that the tender of proof, and offer of payment by the defendant for said land, placed

him in the same relation as if the defendant had been permitted by the land office to do what in this respect was offered to be done."

The judgment of the Court below in favor of defendants, and the orders denying motion for new trial, should be affirmed.