IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 23, 2014 Session

## COMMERCIAL PAINTING COMPANY, INC. V. THE WEITZ COMPANY, LLC ET AL.

Appeal from the Chancery Court for Shelby County
No. CH0615733    Kenny W. Armstrong, Chancellor

No. W2013-01989-COA-R3-CV - Filed November 18, 2014

In this construction contract dispute, the trial court granted summary judgment in favor of the defendant general contractor as to all of the plaintiff subcontractor's tort claims. The parties proceeded to trial on the remaining issues and judgment was awarded in favor of the subcontractor. Both parties raise numerous issues on appeal. Because we conclude that the trial court applied an improper standard in granting summary judgment, we vacate the order of summary judgment in favor of the general contractor. In addition, because the subcontractor's tort claims may alter the remaining issues in this case, we decline to consider the remaining issues raised by the parties. Vacated and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and ROBERT L. CHILDERS, SP. J., joined.

Scott A. Frick, Memphis, Tennessee, for the appellant, Commercial Painting Company, Inc.

Jeffrey C. Smith, Memphis, Tennessee, for the appellee, The Weitz Company, LLC.

Holly Streeter-Schaefer, Kansas City, Missouri, admitted Pro Hac Vice, for the appellee, The Weitz Company, LLC.

**OPINION**

## Background

This case arises over a contract dispute between general contractor, Defendant/Appellee The Weitz Company, Inc. ("Weitz"), and its dry-wall subcontractor, Plaintiff/Appellant Commercial Painting Company, Inc. ("Commercial Painting"). Weitz is a foreign limited liability company who was employed to construct a multi-building retirement community in Germantown, Tennessee. Commercial Painting is a closely-held Tennessee corporation owned by Mark Koch. Commercial Painting's primary business is performing commercial and residential construction wallcovering, painting, drywall installation, metal stud installation, and other projects.

The contract at issue involved the construction of a multi-building facility in Shelby County. After Commercial Painting successfully bid on the project, in September of 2004, the parties entered into a subcontract for Commercial Painting to perform substantial work on the project. The subcontract provided that Commercial Painting would be paid $3,222,400.00 for its work on the project. Specifically, the subcontract obligated Commercial Painting to perform drywall installation throughout the project. In some places, Commercial Painting was required to perform a high level finish on the dry wall, in order that the wall could be painted. For the remainder of the contract obligations, however, Commercial Painting was only required to perform a mid-level finish on the walls. Whether Commercial Painting actually performed at this level would become an issue of much dispute as the project progressed.

Allegedly, at the time the parties entered into the subcontract, Weitz was already approximately six to eight months behind schedule on the project. Commercial Painting would later assert that Weitz improperly and unreasonably compressed construction schedules in order to make up for the delay on the project. According to Weitz, however, the project became further behind once Commercial Painting began working on the project in the winter of 2004 due to Commercial Painting's allegedly poor worksmanship and failure to provide enough workers to timely complete the project. Because of this, Weitz allegedly began negotiating with the project owner regarding an extension on the contract completion date. It appears that the project owner eventually allowed a six-month extension, but Commercial Painting was only informed that an extension of approximately four months had been granted. According to Commercial Painting, Weitz intentionally and fraudulently failed to disclose the full extent of the extension, in violation of the letter and spirit of the contract.[1] Even with the extension, however, Commercial Painting alleged that Weitz continued to

---

[1] According to Commercial Painting, Weitz failed to disclose the full extent of the extension because it hoped to complete the project forty-five days early, thereby earning a bonus from the project owner for early completion.

compress its schedules and improperly supplement its work because the extension did not entirely mitigate the eight-month delay on the project.

As previously discussed, the parties also disagreed as to the level of work required by the contract, and both parties asserted that they incurred additional delays and additional costs to bring the work to the desired level. Eventually, Weitz hired additional workers to supplement the work done by Commercial Painting, alleging that it was required due to Commercial Painting's delays. Commercial Painting objected to the supplementation and later alleged that they were required to perform even more work to correct the work of the supplemental workers. At the conclusion of the contract, Weitz paid Commercial Painting on Pay Applications 1 through 12. However, Weitz refused to pay Commercial Painting on Pay Applications 13 through 17, which allegedly included previously agreed-upon work, as well as additional work beyond the contract amount.

Commercial Painting filed a complaint for damages on August 11, 2006, seeking an award of $1,929,428.74, constituting damages for unpaid progress payments, interest on retainage, extra work, unjust enrichment, plus attorney's fees and interest. In addition to its claims against Weitz, Commercial Painting also sought a judgment against Weitz's sureties. Weitz filed an Answer and Counterclaim on January 24, 2007, seeking $500,000 for costs incurred on the project due to delays caused by Commercial Painting. Weitz claimed an additional $233,217.51, representing damages under the liquidated damages provisions of the parties' contract, as well as increased management expenses resulting from the need for additional supervision of the supplemental workers retained by Weitz to complete the project.

On February 10, 2009, Weitz filed a Motion for Partial Summary Judgment pertaining to Commercial Painting's contract claims, arguing that Commercial Painting had waived its right to payment of some of its claims by its failure to comply with the modification terms in the subcontract. In response, in the fall of 2009, Commercial Painting filed two motions to amend its complaint to assert additional causes of action in tort, as well as a claim for punitive damages on the basis that the construction schedule attached to the subcontract was inaccurate and inconsistent with alleged statements about the schedule. The trial court granted Commercial Painting's request to amend its complaint on October 29, 2009. Accordingly, Commercial Painting filed an Amended Complaint on November 25, 2009. In addition to its prior contract claims, Commercial Painting raised additional claims for fraud, intentional and negligent misrepresentation, and rescission/reformation of the subcontract. Specifically with regard to rescission, Commercial Painting contended that the subcontract "should be rescinded in its entirety, or in the alternative, reformed to adjust the subcontract price to include additional compensation to [Commercial Painting] for work, labor, and materials[,] which [Commercial Painting] has provided and incorporated into the Project." Finally, Commercial Painting sought punitive damages against Weitz in the amount of

3

$10,000,000.00.

On October 19, 2010, Weitz filed an additional Motion for Partial Summary Judgment seeking summary dismissal of Commercial Painting's tort, rescission, and punitive damages claims. On July 15, 2011, the trial court granted the Motion for Partial Summary Judgment, and dismissed Commercial Painting's tort, rescission, and punitive damages claims. The court concluded that Commercial Painting could not establish it justifiably relied on any representations regarding the construction schedule, durations, or sequencing of the construction activities and that it could not establish it suffered any damages above and beyond the damages incurred for breach of contract.

On July 28, 2011, Commercial Painting filed a Motion to Reconsider, or in the alternative for Permission to Appeal to this Court, which was denied by the trial court by order of August 11, 2011. On August 28, 2011, the trial court entered an order denying Weitz's original Motion for Summary Judgment pertaining to Commercial Painting's contractual claims.

A bench trial commenced on January 9, 2012. At the conclusion of the proof, the trial court directed both parties to prepare proposed findings of fact and conclusions of law prior to closing arguments. Commercial Painting and Weitz complied with the trial court's order and closing arguments occurred on November 26, 2012. At the conclusion of this hearing, however, the trial court provided the parties the opportunity to submit revised proposed findings of facts and conclusions of law.

On March 6, 2013, the trial court entered its Memorandum Opinion, and awarded Commercial Painting a judgment of $450,464.26. Both parties filed timely Motions to Alter or Amend the Judgment. On August 1, 2013, the trial court entered an Order reducing the award entered by the trial court in the Memorandum Opinion Order to $448,874.26. The trial court further awarded Commercial Painting $75,000.00 in attorney's fees, and $50,000.00 in expert's fees, thus increasing the total amount of the judgment to $573,874.26.

The judgment against Weitz was partially satisfied and a notice of partial satisfaction of judgment was filed in the trial court on August 2, 2013. On August 12, 2013, Weitz filed a Motion for attorney's fees. Commercial Painting and Weitz filed Notices of Appeal on August 23, 2013, and August 29, 2013, respectively. On September 27, 2013, the trial court entered an Order denying Weitz's Motion for Attorney's Fees on the ground that it considered Commercial Painting the overall prevailing party.

4

**Issues Presented**[2]

Both parties raise several issues on appeal. From our review, there are five issues in this case:

1.   Whether the trial court correctly granted summary judgment in favor of Weitz for Commercial Paintings' intentional and negligent misrepresentation, rescission and punitive damages claims?

2.   Whether the trial court correctly held that Commercial Painting materially breached the contract, and whether the trial court correctly awarded Weitz back-charges based upon this breach?

3.   Whether the trial court erred in its award of the damages owed to Commercial

---

[2]As a point of practice, we note that the appellate record in this case consists of thirty-eight volumes of technical record. In our review of every page of this prolific record, we found that the majority of the pages therein were part and parcel of the protracted discovery that took place in this case. It is, of course, incumbent upon the Appellant to prepare an adequate record for our review. Tenn. R. App. P. 24(b). In this case, although Commercial Painting was designated as the Appellant, it appears that both parties filed notices of appeal and contributed to the state of the record in this case. From our review of the record, Commercial Painting failed to file any designation of less than the entire record within the time required by Rule 24 of the Tennessee Rules of Appellate Procedure. Weitz filed a timely designation of the record, but indicated that no less than the entire record was required to adjudicate this appeal. In preparing the record, the parties should not lose sight of the other mandates contained in Tennessee Rule of Appellate Procedure 24. We specifically refer the parties to Tennessee Rule of Appellate Procedure 24(a), concerning the content of the appellate record. This Rule provides, in relevant part that:

> The following papers filed in the trial court are excluded from the record: (1) subpoenas or summonses for any witness or for any defendant when there is an appearance for such defendant; (2) **all papers relating to discovery, including depositions, interrogatories and answers thereto, reports of physical or mental examinations, requests to admit, and all notices, motions or orders relating thereto**; (3) any list from which jurors are selected; and (4) trial briefs; and (5) minutes of opening and closing of court. Any paper relating to discovery and offered in evidence for any purpose shall be clearly identified and treated as an exhibit. No paper need be included in the record more than once.

Tenn. R. App. P. 24(a) (emphasis added). Had the parties adhered to this rule regarding the exclusion of discovery and other unneeded or duplicitous filings, our record would certainly have been more manageable and the interest of judicial economy would have been better served. Because we very often see extraneous filings in the records, we take this opportunity to remind our future litigants that they should endeavor to adhere to the rules when submitting records to this Court.

Painting for extra work performed on the contract?

4.	Whether the trial court erred in its decision with regard to the award of attorney's fees and expenses?

5.	Whether the trial court erred in failing to grant judgment against Weitz's sureties?

## Analysis
## Summary Judgment

At the outset, we examine Commercial Painting's argument that the trial court erred in granting summary judgment to Weitz on the its claims for fraud, misrepresentation, rescission and punitive damages claims. A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells,*** 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. ***Abshure v. Methodist Healthcare-Memphis Hosps.***, 325 S.W.3d 98, 103 (Tenn. 2010).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 8–9 (Tenn. 2008).[3] However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." ***Id***. at 8. If the moving party's motion is properly supported, "The burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." ***Id.*** at 5(citing ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." ***Martin v. Norfolk Southern Railway Co.***, 271 S.W.3d 76, 84 (Tenn.

---

[3] The ***Hannan*** standard was recently replaced by the enactment of Tennessee Code Annotated Section 20-16-101, which is intended to "return the summary judgment burden-shifting analytical framework to that which existed prior to ***Hannan***." ***Coleman v. S. Tenn. Oil Inc.***, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012). Tennessee Code Annotated Section 20-16-101 applies "to actions filed" on or after July 1, 2011. Because this action was filed in 2006, the ***Hannan*** standard remains in effect.

2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." ***Mathews Partners, L.L.C. v. Lemme***, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing ***Byrd***, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." ***Byrd***, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." ***Id.*** "Summary Judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." ***Landry v. South Cumberland Amoco, et al***, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing ***Carvell v. Bottoms,*** 900 S.W.2d 23 (Tenn. 1995)).

"When considering the evidence, the reviewing court must consider the evidence in a light most favorable to the non-moving party and must resolve all reasonable inferences in the nonmoving party's favor." ***King v. Betts***, 354 S.W.3d 691, 712 (Tenn. 2011) (citing ***B & B Enters. of Wilson Cnty., LLC v. City of Lebanon***, 318 S.W.3d 839, 845 (Tenn. 2010). At this stage, the non-movant's evidence is taken as true, and the trial judge is not to weigh the evidence. *See **McCarley v. West Quality Food Serv.***, 960 S.W.2d 585, 588 (Tenn. 1998). "Summary judgment procedure is not a substitute for trial. It is only when there is no disputed issue of material fact that a summary judgment should be granted. If such fact issue is present, the matter must not be resolved by a battle of affidavits, but must be resolved by a trial on the merits." ***Stone v. Hinds***, 541 S.W.2d 598, 599 (Tenn. Ct. App. 1976).

In this case, the trial court granted partial summary judgment to Weitz, stating:

> [I]t appears to the Court that there are no genuine issues as to any facts material to the new claims for relief asserted by Commercial Painting Company, Inc. in its Amended Complaint to Enforce Mechanics' and Materialmen's Lien and for Damages, specifically Count VII—Intentional/Negligent Misrepresentation and Fraud as to Defendant Weitz; Count VIII—Rescission/Reformation of Contract; and Count IX—Punitive Damages. It further appears to the Court that Commercial Painting Company, Inc. cannot establish all of the

7

essential elements of these claims. Without limitation, the Court finds Commercial Painting Company, Inc. cannot establish it justifiably relied upon any representations with regard to the construction schedules, durations, or sequencing of the construction project at issue here or that it suffered damages as a result of the alleged fraud above and beyond those damages allegedly incurred for breach of contract. As a result, TheWeitz Company, LLC's Partial Motion for Summary Judgment is well taken.

Commercial Painting does not dispute that reliance is an essential element of an intentional misrepresentation[4] claim. Indeed, in order to prevail on a claim for intentional misrepresentation, a plaintiff must show:

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and **was justified in relying on the truth of the representation**; and (6) that the plaintiff sustained damages as a result of the representation.

*Hodge v. Craig*, 382S.W.3d 325, 343 (Tenn. 2012) (emphasis added) (citing *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)). Where intentional misrepresentation is shown, it may be a ground for rescission of a contract. *See Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991). Thus, reliance is also required to prevail on Commercial Painting's rescission claim. Reliance is also an essential element of a negligent misrepresentation claim; in order to prevail on a claim for negligent misrepresentation, a plaintiff must establish that:

> One who, in the course of his business, profession, or

---

[4] Recently our Tennessee Supreme Court clarified that "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are different names for the same cause of action. *See Hodge v. Craig*, 382S.W.3d 325, 342 (Tenn. 2012) (citing *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n.1 (Tenn. 1999)). The Court, therefore, suggested that this tort be referred to as "intentional misrepresentation" henceforth.

employment, or during a transaction in which he had a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982) (emphasis added) (quoting *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 232 (Tenn. Ct. App. 1976)). Thus, there is no dispute that Commercial Painting would have been required, at trial, to show justified reliance.

Instead, Commercial Painting argues that the trial court applied an improper standard in granting summary judgment on the ground that Commercial Painting "cannot establish it justifiably relied upon any misrepresentations with regard to the construction schedules." According to Commercial Painting, this finding is simply insufficient to sustain a grant of summary judgment. To support this contention, Commercial Painting relies on the Tennessee Supreme Court's decision in *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn. 2008), which provides:

> [A] moving party's burden of production in Tennessee differs from the federal burden. **It is not enough for the moving party to challenge the nonmoving party to "put up or shut up" or even to cast doubt on a party's ability to prove an element at trial.** Nor has our Court ever followed the standard put forth by Justice Koch in his dissent, that the moving party may simply show that the nonmoving party "lacks evidence to prove an essential element of its claim." *See Blair* [*v. West Town Hall*], 130 S.W.3d [761,] 768 [(Tenn. 2004)]; *Staples* [*v. CBL & Assoc., Inc.*], 15 S.W.3d [83,] 88 [(Tenn. 2000)]; *McCarley* [*v. West Quality Food Serv.]*, 960 S.W.2d [585,] 588 [(Tenn. 1998)]. This standard is identical to Justice Brennan's standard, which we rejected in *Byrd*. *Byrd*, 847 S.W.2d at 215 n. 5; *see Celotex*, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting).
>
> In summary, in Tennessee, a moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential

9

element of the claim **at trial**.

*Hannan*, 270 S.W.3d at 8–9 (emphasis added). Based upon the trial court's order, it is clear that it granted summary judgment on the basis of the second prong, e.g., that "the non-moving party [i.e., Commercial Painting] will not be able to prove an essential element at trial." *Id.* Specifically, the trial court ruled that Commercial Painting was unable to establish either reliance or damages, as required for a claim of intentional or negligent misrepresentation, as well as rescission based upon misrepresentation.

The *Hannan* decision, however, created a particularly high standard for defendants when attempting to gain summary judgment under this prong. The fact that the plaintiff submits no evidence, at the summary judgment stage, to prove all the essential elements of his or her claims is simply insufficient to sustain a grant of summary judgment. *See id.* at *9 (holding that it is inappropriate to grant summary judgment based upon the non-moving party's failure to submit all evidence to prove his or her claim at summary judgment). Instead, the moving party must conclusively establish that the plaintiff will be unable to prove his or her claim **at trial**. *See In re Estate of Storey*, No. W2010-00819-COA-R3-CV, 2011 WL 2174901, at *22 (Tenn. Ct. App. May 31, 2011) (holding that summary judgment was inappropriate where the defendant failed to "conclusively" establish that an element of the plaintiff's claim could not be proved at trial), *perm. app. denied* (Tenn. Oct. 18, 2011). Indeed, this Court has described the *Hannan* standard as a "substantially more rigorous standard," than prior summary judgment standards in Tennessee and elsewhere. *White v. Target Corp.*, No. W2010-02372-COA-R3-CV, 2012 WL 6599814, at *7 (Tenn. Ct. App. Dec. 18, 2012). As recently explained by this Court:

> Under *Hannan*, to obtain summary judgment in its favor, [the defendant] must negate an element of [the plaintiff's] claim or show that [the plaintiff] cannot establish the elements of her claim. It is not enough to say . . . that [the plaintiff] has not yet proffered evidence to substantiate her assertion[s] . . . . Under that circumstance, [the defendant] has not "disprove[d] an essential factual claim" made by [the plaintiff], and therefore has not shifted the burden to [the plaintiff].

*White*, 2012 WL 6599814, at *7 (footnote omitted). The *White* Court further stated:

> Under *Hannan*, as we perceive the ruling in that case, it is not enough to rely on the nonmoving party's lack of proof even where, as here, the trial court entered a scheduling order and ruled on the summary judgment motion after the deadline for

10

discovery had passed. Under **Hannan**, we are required to assume that the nonmoving party may still, by the time of trial, somehow come up with evidence to support her claim.

**White**, 2012 WL 6599814, at *7, n.3.

Here, the trial court's order granting summary judgment indicates that, based upon the evidence in the record, Commercial Painting could not establish the essential elements of its claims. Nothing in the trial court's order indicates, however, that Weitz had conclusively established that Commercial Painting would be unable to establish these claims at trial. Thus, the trial court's order did not comply with **Hannan**.

The problem created by the trial court's decision is emphasized by Weitz's own appellate brief. In its brief, Weitz takes issue with Commercial Paintings' argument on this issue, as it relies on evidence submitted at trial. According to Weitz, "[t]his Court should not and cannot consider testimony or evidence not part of the summary judgment record in reviewing the [t]rial [c]ourt's summary judgment decision." In order to prevail in its summary judgment motion, Weitz was not simply required to prove that Commercial Painting could not establish all the elements of its claim at the summary judgment stage, but that Commercial Painting would be unable to establish these elements at trial. Thus, trial court testimony that would support a finding that Commercial Painting established the elements of its claim supports Commercial Painting's argument that the trial court prematurely granted judgment on these claims in Weitz's favor. Accordingly, we agree that the trial court applied an incorrect standard in granting partial summary judgment.

On appeal, Weitz argues that in addition to the trial court's ruling that Commercial Painting failed to establish essential elements of its claim, Weitz also affirmatively negated essential elements of Commercial Paintings' intentional and negligent misrepresentation claims. Specifically, Weitz argues that undisputed proof in the record shows that Commercial Painting did not reasonably rely upon any of the alleged false or misleading representations made by Weitz. Weitz also argues that decisions in other jurisdictions have concluded that misrepresentations with regard to construction schedules cannot support claims for intentional or negligent misrepresentation. *See* ***Crawford Painting & Drywall Co. v. J. W. Bateson Co.***, 857 F.2d 981, 985–87 (5th Cir. 1988) (holding that claim regarding misrepresentation of construction schedule sounded in contract, rather than in tort); ***Premier-New York, Inc. v. Travelers Property Cas. Corp.***, 867 N.Y.S.2d 20 (N.Y. Sup. 2008) (holding that a construction schedule is not a representation upon which reliance can reasonably be placed); ***Ebenisteire Beaubois Ltee v. Marous Bros. Construction, Inc.***, No. 02 CV 985, 2002 WL 32818011 (N.D. Ohio Oct. 17, 2002) (holding that the plaintiff's misrepresentation claim sounds in contract, rather than in tort). From our review of the trial

11

court's order granting summary judgment, however, the trial court did not cite either of these arguments as a basis for its decision to grant summary judgment, but instead granted summary judgment merely upon its conclusion that Commercial Painting was unable to establish the essential elements of its claim or any damages beyond contract damages.[5]

The Tennessee Supreme Court recently addressed this Court's duty to examine the record in order to determine whether a trial court properly granted summary judgment when the trial court's order does not provide sufficient legal grounds to support that decision. *See Smith v. UHS of Lakeside, Inc.*, --- S.W.3d ----, 2014 WL 3429204 (Tenn. 2014). According to the Court:

> Despite the amendments to Tenn. R. Civ. P. 56.04 making the statement of grounds mandatory, the Court of Appeals has been reticent to vacate summary judgment orders that plainly do not comply with Tenn. R. Civ. P. 56.04 and to remand them to the trial court for further consideration. The court continues to conduct archeological digs and to review summary judgment orders when the basis for the trial court's decision can be readily gleaned from the record and to remand the case only when their practiced eyes cannot discern the grounds for the trial court's decision.
> We readily agree that judicial economy supports the Court of Appeals' approach to the enforcement of Tenn. R. Civ.

---

[5] The trial court's determination that Commercial Painting would be unable to establish damages beyond contract damages appears to implicate the holding in *Ebenisteire*, a federal case cited by Weitz to support its argument that issues with a construction schedule cannot support a misrepresentation claim. Specifically, the United States District Court in *Ebenisteire* states:

> This Court finds that where the damages alleged in a plaintiff's misrepresentation claim are identical to the damages alleged for a breach of contract, the fact that the plaintiff alleges a material breach of contract will not, in and of itself, permit a party to assert a claim for misrepresentation.

*Ebenisteire*, 2002 WL 32818011, at *11. The trial court's summary judgment order, however, does not cite *Ebenisteire* or any of the other cases cited by Weitz. Further, unlike the order in *Ebenisteire*, the trial court here included no analysis or reasoning to support its decision that Commercial Painting is unable to prove any damages other than contract damages. Finally, as previously discussed, our decision to vacate the trial court's order herein is based on the trial court's application of an incorrect standard for granting summary judgment. The district court in *Ebenisteire* applied the federal standard, which is far less rigorious than the standard adopted by the *Hannan* Court. *See Hannan*, 270 S.W.3d at 8–9; *White*, 2012 WL 6599814, at *7.

P. 56.04 in proper circumstances when the absence of stated grounds in the trial court's order does not significantly hamper the review of the trial court's decision. However, in the future, the resolution of issues relating to a trial court's compliance or lack of compliance with Tenn. R. Civ. P. 56.04 should also take into consideration the fundamental importance of assuring that a trial court's decision either to grant or deny a summary judgment is adequately explained and is the product of the trial court's independent judgment.

*UHS of Lakeside*, 2014 WL 3429204, at *10. Thus, the Tennessee Supreme Court held that it is not the Court of Appeals' duty to perform an "archeological dig" of the record to determine whether summary judgment is justified. *Id.* Instead, that form of review should be limited to those circumstances where the trial court's decision can be "readily gleaned from the record" or where "the absence of stated grounds in the trial court's order does not significantly hamper the review of the trial court's decision." *Id.*

In this case, the appellate record contains twenty-five volumes of documents that were filed prior to the trial court's decision on Weitz's summary judgment motion. In addition, the trial court's written order granting summary judgment makes no mention of the other arguments advanced by Weitz, nor does it contain any reference to the undisputed facts that support its decision, or any other analysis that would illuminate the trial court's reasoning. In this circumstance, we conclude that the proper remedy is to vacate the order of the trial court and remand for further proceedings on this issue. Our ruling herein, however, does not preclude Weitz from raising these grounds in a properly-supported motion for summary judgment upon remand.

### Remaining Issues

As we perceive it, our next consideration must be whether the vacatur of the trial court's summary judgment order precludes consideration of the remaining issues in this case. As previously noted, each party has raised numerous issues in this case regarding the subcontract at issue. Simply put, Commercial Painting contends that it should have been awarded more under the subcontract, while Weitz argues that it should be required to pay less pursuant to the subcontract. These arguments, however, presuppose the existence of a valid contract between the parties. As previously discussed, in Commercial Painting's Amended Complaint, it contends that the subcontract "should be rescinded in its entirety." Because we have vacated the trial court's summary judgment order, this claim remains a possible claim for relief. The Tennessee Court of Appeals has described the remedy of rescission as "the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination,

13

. . . [.] It is the annulling, abrogation of the contract and the placing of the parties to it in status quo." ***Stonecipher v. Estate of Gray***, No. M1998-00980-COA-R3-CV, 2001 WL 468673, at *4 n.2 (Tenn. Ct. App. May 4, 2001) (quoting 22 Tenn. Juris., *Rescission, Cancellation and Reformation* § 1 at 34 (1999)). We recognize that rescission of a contract is an "extreme" remedy that courts should be hesitant to employ. ***Loveday v. Cate***, 854 S.W.2d 877, 879 (Tenn. App. 1992); *see also* ***Douglas v. Foster***, No. M2000-03177-COA-R3-CV, 2002 WL 83605, at *1 (Tenn. Ct. App. Jan. 22, 2002) ("Rescission, however, is not looked upon lightly and will be awarded only under the most demanding circumstances.") (citing ***Early v. Street***, 241 S.W.2d 531 (Tenn. 1951) (noting that rescission should be awarded "very sparingly"). However, the decision as to whether a situation warrants rescission rests in the sound discretion of the trial court. *See* ***Vakil v. Idnani***, 748 S.W.2d 196, 199 (Tenn. Ct. App. 1987).

In this case, should Commercial Painting prevail on its misrepresentation and rescission claims, the contract would be declared "void." Accordingly, the damages awarded to either party based on the contract would be required to be reexamined. Consequently, consideration of these issues would be advisory at this stage in the litigation."It is not the purview of this Court to engage in the rendering of advisory opinions on hypothetical facts." ***Island Properties Associates v. Reaves Firm, Inc.***, 413 S.W.3d 392, 402 (Tenn. Ct. App. 2013) (citing ***Third Nat'l Bank v. Carver***, 31 Tenn. App. 520, 218 S.W.2d 66, 69 (Tenn. Ct. App. 1948)). Accordingly, we decline to consider the remaining issues in this case, as they may be affected by further proceedings in the trial court.[6] The remaining issues are, therefore, pretermitted.

**Conclusion**

The judgment of the Chancery Court of Shelby County is vacated and this cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellee The Weitz Company, Inc., for which execution may issue if necessary.

---

[6] We recognize that the trial judge in this case was appointed to the Tennessee Court of Appeals after the conclusion of this case in the trial court. Accordingly, proceedings on remand will necessarily take place with another trial judge presiding. Regardless, the Tennessee Supreme Court has encouraged this Court to remand summary judgment issues to the trial court where sufficient legal grounds for the grant of summary judgment are not presented, in order to insure both that the decision is "adequately explained and is the product of the trial court's independent judgment." ***UHS of Lakeside***, 2014 WL 3429204, at *10. Further, the Tennessee Supreme Court has held that courts "may not render advisory opinions based on hypothetical facts." ***Colonial Pipeline Co. v. Morgan***, 263 S.W.3d 827, 838 (Tenn. 2008). Accordingly, remand to the trial court is the appropriate remedy in this case.

_____
J. STEVEN STAFFORD, JUDGE